FONCE FISHER et al. v. STATE.

No. A-5114. Opinion Filed Oct. 30, 1925.
(240 Pac. 655.)

J. W. Tyree and J. F. Thomas, for plaintiffs in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

EDWARDS, J. From a conviction in the county court of Comanche county on a charge of transporting whisky, the plaintiffs in error, hereinafter called defendants, have appealed.

The only assignment of error argued is that the evidence is insufficient to sustain the verdict. This contention is based on the matter of the identification of the defendants as the persons transporting the whisky in question. We have examined the evidence in the record carefully, which shows a state of facts about as follows: On or about

the 2nd day of August, 1923, three boys were traveling along the highway just out of Chattanooga, two of them in a wagon and one on horse back. Two men, accompanied by a woman and child, in a Chevrolet automobile, traveling along the same highway, drove up behind them, at one time coming within a few yards of them; the distance being estimated as close as across the courtroom. Of the persons in the car, one of them got out of the car and placed some whisky behind a post. The car then drove away, and the boys went back, and got the whisky, and took it to their home. The sheriff was called, and went to Chattanooga, and arrested the defendants. The identification of the defendants as the persons who placed the whisky at the spot where it was found depends upon the evidence of William Ward, a boy 14 years of age. An examination and analysis of his testimony renders it, we think, sufficient to sustain the verdict. He testifies in part as follows:

"* * * Q. Did you see Fred Fisher on that day? A. Yes, sir.

"Q. Who was with him? A. Fonce and his wife.

"Q. How were they traveling? A. In a Chevrolet. * * *

"Q. Now, tell the jury just what you saw them do in reference to stopping there? A. Well, we were driving along, and they came out from town, and they drove behind us real slow. We watched them, and we just kept going on, then they stopped—I was pretty sure they backed and cut in the grade and came to a stop. A Ford touring car came along, and they stopped the touring car and was talking. I am pretty sure they was talking.

"Q. Did you see either one of these defendants get out of the car? A. Yes, sir.

"Q. Which one was it? A. Fred Fisher, the tall one. He got the whisky, and he went around behind the car. I saw him get the stuff out and set it behind the post.

"Q. Where did he get the whisky from? A. The car.

"Q. What car? A. The car he was in.

"Q. Where did he take it to? A. Out by the post; the fence post. * * *"

Then, after testifying about the recovery of the whisky deposited and calling the sheriff, he further testified:

* * * "Q. Did you go down town yourself then? A. Yes, sir.

Q. Did you see that car down there any where? A. Yes, sir.

"Q. Where did you see it? A. On Main street.

"Q. Who was in the car when you saw it down there? A. When I saw it they was searching it.

"Q. Did you see Fred or Fonce Fisher down there? A. I saw them both.

"Q. Were they around the car? A. Yes; both of them, and the wife and baby. * * *

"Q. How did you know? A. I noticed the sign that was in front there. The shape it was in.

"Q. You knew that before you went back to town? A. Yes, sir. * * *"

He then testifies about going to town with the deputy sheriff and about seeing the parties there as follows:

"* * * Q. How soon did you go down there? A. I went home and stayed about one minute, and then I went up town, and when I got up town they was searching the car.

"Q. Who was in the car at that time? A. There was nobody but Fonce, Fred, a lady, and the baby when they was searching it, the same ones that was in it when they drove up behind us. * * *

"Q. Now, did you see the same car when they was searching it? Was that the same car they was in when they put the whisky there? A. Yes, sir.

"Q. It was a Chevrolet automobile? A. Yes, sir.

"Q. Now, I believe you testified, William, that when you saw them down in Chattanooga that there was Fonce and Fred and a woman and a baby in the car. I want you to state whether or not they were the same people that were in this car out there where you found the whisky? A. Yes, sir.

"Q. You cannot be mistaken about that? A. I could be mistaken about that. I could be, maybe, but I am pretty sure it was them.

"Q. These people that you saw down there; two of them that you saw down there at Chattanooga, I want you to state whether or not are these two defendants here. A. Yes, sir. * * *"

In addition to this testimony there was evidence of statements made by the defendant Fred Fisher to a deputy sheriff and to the jailer which tended to prove his connection with the whisky. This presents a question of fact, and, where the reasonable and logical inferences arising from the evidence are such that the jury may find the guilt of the defendant, its weight and credibility is for the jury, and, in the absence of unusual circumstances, will not be disturbed by this court.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.